UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 17-CV-20196-MARTINEZ-GOODMAN

COMMODITIES & MINERALS ENTERPRISE
LTD., a company incorporated under the laws of
the British Virgin Islands,

      Petitioner,
vs.

CVG FERROMINERA ORINOCO, C.A.,

      Respondent.
_____/

## ORDER GRANTING PETITION TO CONFIRM AND DENYING MOTION TO VACATE ARBITRATION AWARD

THIS CAUSE is before the Court upon the Petition to Confirm and Enforce International Arbitration Partial Final Award ("Petition") filed by Commodities & Minerals Enterprise Ltd. [ECF No. 1] and the Motion to Vacate Partial Final Award on Security or to Remand ("Motion") filed by CVG Ferrominera Orinoco, C.A. [ECF No. 17]. The Court has carefully considered the pleadings, responses and replies, has heard arguments of counsel, and is otherwise fully advised in the matter.

### I. BACKGROUND

This case arises out of a series of contract disputes between Petitioner Commodities & Minerals Enterprise, Ltd. ("CME"), a company incorporated under the laws of the British Virgin Islands, and Respondent CVG Ferrominera Orinoco ("CVG"), a company incorporated under the laws of Venezuela and wholly owned by the Venezuelan government. While the Petition and Motion before this Court only relate to one of the contracts between CME and CVG, an

understanding of each of the contracts described below is important to comprehend the relationship between the parties.

**A. CME and CVG's Agreements:**

1. <u>2004 Iron Ore Sales Contract</u>

In 2004, CME entered into a contract with CVG for the sale and purchase of Venezuelan iron ore, whereby, CVG agreed to sell various quantities of iron ore to CME from January 2005 to December 2009. [ECF No. 1, p.4; ECF No. 17, p. 3].

Due to CVG's cash flow problems, CME and CVG amended their business operations so that CME would supply CVG with financing, goods, services, and works required by CVG in exchange for iron ore products. [ECF No. 1, p.4].

2. <u>Framework Agreement</u>

In 2009, CME and the Venezuelan Corporation of Guayana, CVG's parent corporation, entered into an agreement known as the Framework Agreement. Pursuant to the Framework Agreement, CME agreed to provide the services necessary to aid in reopening an inactive iron ore mine, in exchange for three million metric tons of iron ore per year for the ten-year term of the Framework Agreement. *Id.*

3. <u>General Piar Charter</u>

In January 2010, CME and FMO entered into the General Piar Charter whereby CME agreed to charter vessels on CVG's behalf.

4. <u>Transfer System Management Contract</u>

In August 2010, the parties entered into the Transfer System Management Contract ("TSMC"). Under the TSMC, CME agreed to organize, manage, and operate CVG's logistics system by which iron ore was transported from CVG's mines to the offshore transfer station, which

was 180 miles away from the mines. [ECF No. 6-3]. Under this agreement, CME continued to accept iron ore as a valid method of payment for its services in accordance with the 2004 Iron Ore Sales Contract. *Id.* Furthermore, in this agreement, the parties agreed to the following provision:

> The parties hereby expressly declare their Contract to submit to binding arbitration any and all controversies arising from, or in any way related to, this Contract and/or the execution and/or interpretation thereof, including, but not limited to, the validity and/or enforceability of this clause; and consequently further expressly waive their right to submit any such controversies to the jurisdiction of the Courts of any State/Country, including expressly, but not limited to, the jurisdiction of the Venezuelan Courts, as allowed by the Venezuelan Commercial Arbitration Act and any other applicable Venezuelan laws. The parties further declare that this Contract has been negotiated at arm's length and in no way may be construed as a contract of adhesion for neither of them. Should a controversy arise that, by virtue of any applicable legislation, may not be submitted to arbitration, then only that controversy, and no other, may be submitted to the Courts having jurisdiction.
> Arbitration shall be conducted in Miami, Florida, in accordance with the Rules of the Society of Maritime Arbitrators then in force, in the English language. The arbitration shall be exclusive and mandatory. The following procedure shall be followed for the appointment of arbitrators:
>
> > (i) The arbitration panel shall consist of three arbitrators, one to be appointed by each of the parties hereto and third by the two chosen. The Arbitrators shall be experienced in both commercial and maritime law. Either party may initiate the arbitration as provided in the Rules of the Society of Maritime Arbitrators. The Arbitrators shall apply the General Maritime Law of the United States of America as the substantive law.
> >
> > Their decision shall be final and binding for the parties as though it were the final and unappealable decision of a Court of competent jurisdiction. The Arbitration Panel shall have the authority to order any and all preventive measure as it deems fit, and either party shall be entitled to present such order to any competent Court for its enforcement. The Arbitrators shall also have the authority to certify copies of any and all documents submitted to them and/or orders issued by them. The award shall be reasoned and shall set forth findings of fact and conclusions of law. The award shall include interest at the prime rate of interest announced publicly by the Wall Street Journal (or its successors) as the so-called "prime rate."
>
> The prevailing party shall recover all attorney's fees and costs from the other party.

[ECF No. 6-3, p.37 and ECF No.17-3, p.69].

5. December 2010 Commercial Alliance Agreement

Four months after the parties signed the TSMC, they entered into a Commercial Alliance Agreement ("CAA"). [ECF No. 17-4]. The parties are in disagreement as to the purpose and intent of the CAA. CVG alleges that "clause 13 of the CAA described its legal effect over the parties' prior relationship as a "Novation," providing that all prior contracts signed by Ferrominera and CME were to be subsumed under it." [ECF No. 17, p.5]. CME contends that "[t]he CAA was intended to complement the provisions of the Framework Agreement, and set forth certain terms and procedures with which each development contract would have to conform, including the development contracts into which CMA and FMO already had executed." [ECF No. 1, p.6].

6. May 2012 Iron Ore Sales Agreement

In May 2012, CME and CVG entered into a second iron ore sales agreement pursuant to which CVG agreed to sell and deliver certain amounts of iron ore products.

7. July 2012 Wagons Contract

Shortly after the 2012 Iron Ore Sales Agreement, parties entered into yet another contract for the sale and purchase of a number of railway wagons for the transportation of CVG's iron ore. [ECF No. 17-5]. Disputes arising under this contract are subject of a separate proceeding.

B. Political Upheavals of Venezuela

As alleged in CME's pleadings, throughout the parties' contractual relationship, it was common for CVG to owe substantial sum of money to CME. The total sum started to increase following the death of Venezuelan President Hugo Chavez in 2013, and the appointment of a high-ranking, active duty Venezuelan military officer as president of CVG. [ECF No.1, p.7]. When CME addressed its outstanding debt owed by CVG, the new management attempted to retroactively rewrite the terms of its agreements with CME. After those terms were rejected by

CME, CVG rescinded all of its agreements with CME, alleging that they were in violation of Venezuelan law and thus void. [ECF No. 17, p.6]. As a result, CME commenced a declaratory action against CVG in Venezuela, seeking a declaratory judgment that CME's contracts with CVG were in compliance with Venezuelan laws [ECF No.1, p.7]. After a two-year legal battle, the Venezuelan Administrative Court ultimately determined that the contracts were executed in compliance with Venezuelan laws and that they did not violate or were not executed in violation of the foreign exchange laws.

As a result of the Venezuelan court's ruling, CME began to take measures to pursue its claims against CVG pursuant to the arbitration clauses in its various development contracts. CME commenced Arbitration proceedings in New York, Miami, London, and Zurich, each relating to a different contract between CME and CVG. The Petition at issue before this Court however, arise only from the arbitration that took place in Miami, Florida, which is based on CVG's alleged violations of the TSMC.

### C. Arbitration Proceeding under the TSMC Agreement

On February 9, 2016, CME commenced arbitration against CVG under the TSMC, which provided for arbitration in Miami, Florida, in accordance with the rules of Society of Maritime Arbitrators ("SMA"). [ECF No. 17, p.7]. In its demand for arbitration, CME alleged breach of contract and account stated and sought over $212,262,096.46 in damages. CVG moved for dismissal on the grounds that the Panel lacked jurisdiction, which the panel deferred until further evidentiary hearings could be held. *Id.*

CME moved for partial security award for certain portions of its claim, including security in the amount of $103,246,034.00 for monthly payments for throughput charges that were due to CME under the TSMC, which payments were made by CVG to CME with no right of deduction

or setoff ("Throughput Claims"). CME's security motion was viewed by both parties, and after hearings were held, on January 5, 2017, a three member arbitration panel of issued the Partial Final Award of $62,730,279.98 (the amount of the throughput claims plus accrued interest at 3.25%). [ECF No.1-2].

In granting CME's Motion for Security, the panel held that CME had made an adequate showing of likelihood of success on the merits of the claims, and that CVG had not made a convincing showing that it had viable grounds for disputing CME's invoices for the Throughput Claims. Furthermore, the panel recognized the difficulty CME would likely face in enforcing an eventual final award, and the considerable financial hardship CME would encounter if the award were not enforced, which weighed heavily in favor of awarding the prejudgment security. The award ordered CVG to make a deposit in the amount of $62,730,279.98 in an escrow account to be established by the parties and held by a first-class New York bank pursuant to Appendix C of the SMA Rules.

On January 17, 2017, CME filed its Petition before this Court to confirm and enforce the Partial Final Award ordered by the TSMC Arbitration panel. [ECF No.1]. On April 5, 2017, CVG moved to Vacate the Partial Final Award ordered by the TSMC Arbitration panel, arguing that the panel never had jurisdiction to issue such award, and that the arbitration clause was subject to requirements of Venezuelan law, which CVG contends were not met. [ECF No. 17]. CVG also filed an opposition to CME's Petition to Confirm and Enforce the Partial Final Award. [ECF No. 21]. Similarly, CME filed its opposition to CVG's Motion to Vacate the award. [ECF No. 27].

On June 25, 2018, the Court held a hearing and entertained oral arguments on the Petition and the Motion.

## II. LEGAL STANDARD

This case falls under the confines of the New York Convention. Congress defined agreements falling under the Convention as agreements between parties that are not citizens of the United States "arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [i.e., maritime transactions or transactions involving commerce]." 9 U.S.C. § 202 (2018). Furthermore, Article I (1) of the New York Convention provides that the Convention applies "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." The Partial Final Award at issue in this case is subject to enforcement under the New York Convention as it involves a non-domestic award because it is between two parties domiciled and having their principle place of business outside of the United States.

The principal purpose underlying the New York Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which . . . arbitral awards are enforced in signatory countries." *Scherk v. Alberto-Culver Co.* 427 U.S. 506, 520 n.15 (1974). For this reason, an international arbitration award under the New York Convention is "subject only to minimal standards of domestic judicial review." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F. 3d 1434, 1440 (11th Cir. 1998). Under the New York Convention, great deference is given to the judgments of international arbitration panels, and as such "this Court's review of the award thus is extremely limited." *Rintin Corp. v. Domar, Ltd.*, 374 F. Supp. 2d 1165, 1169 (S.D. Fla. 2005), *aff'd*, 476 F.3d 1254 (11th Cir. 2007); *see also Osram Sylvania, Inc. v. Teamsters Local Union*, 87 F.3d 1261, 1263 (11th Cir. 1996).

Furthermore, the Federal Arbitration Act ("FAA") provides "for expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). A court must confirm an award, "unless the award is vacated, modified, or corrected" pursuant to the FAA. 9 U.S.C. § 9. "Judicial review of arbitration awards is 'narrowly limited,' and the FAA presumes that arbitration awards will be confirmed." *Gianelli Money Purchase Plan & Trust v. ADM Inv. Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 2008) (quoting *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1188 (11th Cir. 1995). The FAA sets forth four grounds for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a)(1-4). The burden of establishing one of these grounds rests with the party requesting vacation. *Riccard v. Prudential Ins., Co.*, 307 F/3d 1277, 1289 (11th Cir. 2002).

CVG seeks vacation of the Partial Final Award on the basis that the arbitrators imperfectly executed their power by not resolving CVG's objections as to the validity of the parties' arbitration agreement before rendering the Partial Final Award on Security. [ECF No. 17, p. 9]. This Court disagrees and finds no ground to vacate or modify the Award.

//

//

//

## III. ANALYSIS

### A. The Arbitration Panel did not Exceed or Imperfectly Execute its Power.

Rule 30 of SMA states that security awards may be given if the arbitration panel finds that it is equitable to do so. Here, the Arbitration Panel laid out the criteria necessary to warrant a security award: (1) likelihood of success on the merits of the claim and (2) potential difficulty in enforcing a potential final award. [*See* ECF no. 1-2]. The Arbitration Panel's decision explains how these two criteria are met in this case. Furthermore, the Arbitration Panel ordered CVG to post the security award in the exact manner dictated by Appendix C of the SMA Rules.

CVG's assertions that the Arbitration Panel imperfectly executed its power by granting a security award before addressing their motion to dismiss are baseless. Federal courts routinely provide preliminary relief prior to addressing the merits of jurisdictional arguments. In *D'Amico Dry Ltd. v. Prima Maritime (Hellas) Ltd.*, 201 F. Supp. 3d 399 (S.D.N.Y. 2016), the court originally denied the defendant's motion to dismiss for lack of subject matter jurisdiction, but ultimately dismissed the case for lack of subject matter jurisdiction following a trial where the defendant was allowed to submit more evidence on the matter. *Id.* at 401, *rev'd on other grounds* 886 F.3d 216 (2d Cir. 2018). In *111 Debt Acquisition LLC v. Six Ventures Ltd.*, No. 2:08-CV-768, 2008 WL 3874630 (S.D. Ohio Aug. 15, 2008), notwithstanding the fact that the subject matter jurisdiction of the court was in dispute, the court granted a preliminary injunction reasoning that the plaintiff was likely to succeed on the merits of the claim. *Id.* at *6, 18. It is well established that a court can dismiss a case for lack of subject matter jurisdiction at any time during the proceedings of the case, even after preliminary relief (such as a temporary restraining order or a preliminary injunction) is granted. *See* Fed. R Civ. P. 12(h)(3).

Similarly, in this case, the arbitration panel issued a Preliminary Award for Security in favor of CME before making a final determination on CVG's jurisdictional opposition. The panel did not deny CVG's Motion to Dismiss, but decided to wait until an evidentiary hearing could be held before making a ruling on the Motion to Dismiss. Furthermore, the arbitration panel looked to two factors to determine whether issuing a preliminary security award was proper. The first factor dealt with an analysis of the likelihood of success on the merits of CME's claim. The second factor dealt with whether enforcement of an eventual judgment would be difficult. After looking at these two factors, the arbitration panel found that CME was likely to succeed on the merits of its claims and that a potential final judgment would in fact be difficult to enforce given CVG's financial difficulties. For this reason, the arbitration panel did not exceed its power by issuing a preliminary award to CME.

**B. The Court will Give Deference to the Arbitration Panel's Decision.**

CVG also alleges that the Arbitration Panel lacked jurisdiction because (1) CVG's capacity to consent to the arbitration was subject to the compliance of several Venezuelan mandatory statutes adopted under the law applicable to CVG's capacity; and (2) the arbitration agreement was not valid as the parties expressly subjected CVG's consent to arbitration and waiver of jurisdiction to compliance with the Venezuelan Commercial Arbitration Act and other applicable Venezuelan laws. In making this argument, CVG points to the text of the arbitration clause. CVG claims that an *ab initio* review of the arbitration agreement is merited in this case pursuant to *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 286 (3d Cir. 2003). Nevertheless, this Court disagrees as issue of arbitrability is reserved for the Arbitration Panel.

Under the rule of *First Options*, the controlling Supreme Court case on this matter, courts should only hold that the parties have agreed to arbitrate arbitrability where there is "clear and

unmistakable" evidence that they did so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). While SMA Rules do not specifically delegate to the arbitrators the right to determine their own jurisdiction, the language of the parties' arbitration agreement itself gives the Arbitration Panel the authority to determine the validity and enforceability of that agreement. The language of the TSMC arbitration clause specifically states: "[t]he parties hereby expressly declare their Contract to submit to binding arbitration any and all controversies . . . including, but not limited to, the validity and/or enforceability of this clause." This language is "clear and unmistakable." In addition, counsel for CVG conceded to the arbitration panel that it has the power to determine its own jurisdiction.

Furthermore, *First Options* states that under the FAA, the question of whether arbitrators or courts have the primary power to decide arbitrability depends on whether the parties have agreed to submit that question to arbitration. *Id.* at 943. This Court has previously stated, "Where a party has 'voluntarily and unreservedly' submitted an issue to arbitration, it is later precluded from arguing that the arbitrator did not have authority to resolve that issue." *Arlen House Condo. Assoc. v. Hotel Employees & Restaurant Employees Int'l Union Local 355*, No. 06-21040-CIV-MORENO 2008 WL 4844109, at *9 (S.D. Fla. Nov. 10, 2008) (quoting *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175 (7th Cir. 1985)).

CVG cites *China Minmetals* as a basis for requiring an independent review of the arbitrability of the award *ab initio* arguing that the Panel did not have the capacity to consent to the arbitration agreement, and therefore, the panel has no jurisdiction. *China Minmetals* states that an independent review is warranted under *First Options* when a party opposes an arbitration award on the basis that the agreement containing the arbitration clause from which the arbitration panel

obtained its jurisdiction was void *ab initio*. *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d at 289. In *China Minmetals,* however, the party opposing the award never submitted the issue of jurisdiction to the arbitration panel.

Here, CVG voluntarily submitted the issue of arbitrability to the Arbitration Panel, so they cannot claim after the fact that the panel lacks the authority to decide its jurisdiction. *First Options* and *Arlen House Condo Assoc. China Minmetals*, as well as *Exceed Int'l Ltd. v. DSL Corp.*, No. H-13-2572 2014 U.S. Dist. LEXIS 59913 (S.D. Tex. April 30, 2014) and *Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, No. 03-41 65-JAR 2005 Dist. LEXIS 8810 (U.S. Kan. May 10, 2015), are distinguishable because in those cases the arbitrators' authority to arbitrate their own jurisdiction was not specifically written into the contract, but in the rules of arbitration that were used. The courts in those cases held that the reason for allowing courts to determine arbitrability was that the parties did not explicitly agree to incorporate that particular rule into the arbitration clause of the contract. In this case however, the agreement explicitly states that the enforcement of the arbitration clause is a matter to be decided by arbitration. This meets the high standard of "clear and unmistakable evidence" necessary for courts to defer to the decisions of arbitrators for this issue under *First Options*.

For these reasons, the validity and enforcement of the arbitration clause is a matter for the arbitration, not the Court, to decide.

### C. CVG's Jurisdictional Arguments are also without Merit.

#### 1. The TSMC Overrides CVG's Consent Arguments.

CVG contends that the entire arbitration clause of the TSMC is invalid because it did not comply with the Venezuelan Commercial Arbitration Act, voiding any decision made by the

arbitration committee. This contention is also made without authority to back up the substance of the argument. The relevant part of the arbitration clause states as follows:

> [I]ncluding, but not limited to, the validity and/or enforceability of this clause; and consequently further expressly waive their right to submit any such controversies to the jurisdiction of the Courts of any State/Country, including expressly, but not limited to, the jurisdiction of the Venezuelan Courts, as allowed by the Venezuelan Commercial Arbitration Act and any other applicable Venezuelan laws.

TSMC, Clause 41.

CVG contends that the phrase "as allowed by the Venezuelan Commercial Arbitration Act and any other applicable Venezuelan laws" means that for the arbitration clause to be valid, it must comport with the necessary prerequisites under the Venezuelan Commercial Arbitration Act. The semicolon in the above clause renders this argument invalid. *See Thomas v. Clinton*, 607 F. App'x 903 (11th Cir. 2015) (when two provisions in a contract are separated by a semi-colon, a modifying or limiting phrase in one provision does not apply to the other).

Furthermore, Clause 40 of the TSMC states that the applicable choice of law with governing conflicts of law is General Maritime law of the United States of America, so CVG cannot contend that the contract is invalid because it does not follow Venezuelan law. For this reason, the text of Clause 40 of the TSMC supersedes CVG's arguments that the arbitration clause is invalid because it is not in compliance with the applicable Venezuelan laws.

### 2. An Analysis of Venezuelan Law is Unnecessary and Inappropriate.

CVG argues that its ability to consent to the arbitration requires compliance with the necessary prerequisites under Venezuelan law. CVG states that under the Venezuelan Commercial Arbitration Act, state-owned companies require the written authorization and approval of the relevant Minister. This argument is groundless. There is nothing in the contract or the arbitration clause concerning consent, nor does CVG provide any case law in support of its contention. In

addition, CVG signed the contract, picked its own arbitrator as directed in the arbitration clause, and presented its arguments in front of the Arbitration Panel. CVG's conducts demonstrate that it did consent to the arbitration clause. As stated above, the relevant choice of law for conflicts is General Maritime law of the United States of America. CVG repeatedly relies on an analysis of Venezuelan law, which this Court has neither the expertise, nor the authority, to adjudicate.

### 3. The Novation Clause of the CAA does not Invalidate TSMC's Arbitration Clause.

CVG argues that the CAA contains a novation clause that subsumes the terms and conditions of all previous contracts made between CVG and CME, including the TSMC. The clause states as follows:

> All Contracts signed by [CVG] and CME prior to this contract will be subsumed under this contract. Novation of provisions in those contracts includes matters relating to positioning of the Parties in the contractual relationship, wherein CME will substitute its capacity as a buyer of ore, with that of an associate or ally, which is assumed in this contract; the rest of the obligations undertaken by each of the Parties in those contracts to remain intact, specifically with respect to the volume of ore and/or hot-briquetted iron to be sold. In ongoing projects, resources will be managed through mechanisms the Parties agree to establish, or the trust. Ore volumes not linked to a project will be sold based on the marketing contract entered in 2004.

CAA Clause 13.

CVG argues that the provisions of CAA regarding choice of law and capacity to consent override the provisions in the TSMC. This Court disagrees with such interpretation. The novation clause specifically states which provisions in previous contracts are to be subsumed in the CAA, and does not include anything regarding choice of law, arbitration of disputes, or consent. The novation provision uses the phrase "Including," but does not say "Including, but not limited to." Thus, there is no evidence

that the CAA was intended to override the arbitration clause or the choice of law clause in the TSMC.

Furthermore, CVG has brought all three of these arguments in front of the Arbitration Panel in its Motion to Dismiss. While the Arbitration Panel has yet to make a final decision on the Motion to Dismiss, none of these arguments override the fact that the Arbitration Panel has the authority to order a prejudgment security award before deciding jurisdictional motions. It is for the Arbitration Panel to decide the merits of CVG's jurisdictional arguments, not this Court. Deference must be given to the decisions of the Arbitration Panel, and none of the requirements to vacate the arbitration award are met in this case.

### D. There is no Reason to Remand the Award to the Arbitration Panel.

Finally, CVG contends that this Court should remand the Partial Final Award on Security to the Arbitration Panel until it settles the jurisdictional disputes raised by CVG in arbitration, citing the following cases in support of its argument.

In *Atlas One Fin. Group v. Freecharm Ltd.*, No. 10-24539-mc-COOKE/TURNOFF 2011 U.S. Dist. LEXIS 51441(S.D. Fla. May 13, 2011), this Court remanded a final award given by an arbitrator, supporting the notion that this Court has the authority to remand an award issued by an arbitration panel. The Tenth Circuit and the Second Circuit have also remanded arbitration awards. *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822 (10th Cir. 2005); *Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42 (2d Cir. 1985). All three cases are much different from the case at issue. In *Atlas One*, arbitrators' decision evidenced a manifest disregard of the law. *See* No. 10-24539-mc-COOKE/TURNOFF at *2. In *Olympia & York*, the arbitrators failed to foresee a possible eventuality. *See* 776 F.2d at 46. Finally, in *U.S. Energy Corp*, the arbitration award was

so vague, the court needed to employ "extensive guesswork" to complete a valuation of a constructive trust imposed by the arbitrators. *See* 400 F.3d at 836.

Other cases that have involved a court remanding an arbitration award are also distinguishable. *Fisher v. Gen. Steel Domestic Sales, LLC*, No. 10-cv-01509-WYD-BNB 2011 U.S. Dist. LEXIS 125826 (D. Colo. Oct. 31, 2011) (remanding an award because the arbitrator failed to make a final determination of a material issue); *Escobar v. Shearson Lehman Hutton*, 762 F. Supp. 461, 464 (D.P.R. 1991) (remanding award because it indicated that the arbitrators might have imperfectly executed their powers).

*Escobar* does not apply to this case because the arbitrators did not exceed their powers in ordering the Partial Final Award, as SMA Rule 30 states that security awards may issued if the arbitrators find that it is equitable to do so. Exhibit C of the SMA Rules clearly lays out a procedural standard for issuing security awards. Furthermore, the Arbitration Panel clearly laid out the criteria necessary to warrant a security award: (1) likelihood of success on the merits of the claim, and (2) difficulty in enforcing a potential final award. The Arbitration Panel's decision explains how those two criteria are met in this case. For this reason, there is no ambiguity or uncertainty in the award that requires further clarification, nor did the arbitrators exceed their power under the SMA. Finally, *Fisher* is distinguishable because it dealt with a material issue of fact concerning a <u>final</u> arbitration award. While there may be a material issue of fact yet to be determined, it does not restrict the arbitrator's power under the SMA to issue a security award, as it is a procedural, pre-judgment award. Therefore, this Court finds no reason to remand the Award to the Arbitration Panel.

## IV. CONCLUSION

The Court concludes that CVG has not met its burden to warrant vacating the arbitration award. CVG has failed to show that the Panel exceeded it authority or that it manifestly disregarded the law. Accordingly, it is hereby **ORDERED AND ADJUDGED** that

1. CME's Petition to Confirm and Enforce International Arbitration Partial Final Award ("Petition") [ECF No. 1] is **GRANTED**;

2. The Court hereby **CONFIRMS** the January 5, 2017 Arbitration Opinion and Award;

3. CVG's Motion to Vacate Partial Final Award on Security or to Remand [ECF No. 17] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18 day of July, 2018.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record